1809.   LEWIS <i>v.</i> BRANNEN.

1. Section 1499 of the Political Code of 1895, which confines the compounding and vending of drugs and medicines (with only certain enumerated exceptions) to licensed druggists, apothecaries, and pharmacists, relates to all pharmaceutical and medicinal preparations, whether recognized by the pharmacopœia and other standard works or not.

2. The exception made by the third subdivision of section 1499 of the Political Code of 1895 in favor of "merchants selling family medicines not poison, as prescribed and allowed by the Code of Georgia," has reference to section 1409 of the Code of 1873. It does not permit the compounding of medicines by merchants or others, but it allows merchants to sell such non-poisonous patent medicines and drugs already prepared, warranted by some licensed druggist, as have become generally considered to be household remedies, by reason of the fact that, through common use, the effects produced by them are well understood by people without medical knowledge.

3. The injuring or the damaging of the reputation of a business which the law forbids to be carried on can not be made the basis of an action for the recovery of damages. Ex dolo malo non oritur actio.

Action for damages, from city court of Atlanta—Judge Reid. March 6, 1909.

Argued May 21,—Decided July 6, 1909.

*Lowndes Calhoun,* for plaintiff.

*Westmoreland Brothers,* for defendant.

POWELL, J.  The petition alleges, in substance, that the defendant carries on a regular drug business; that the plaintiff is engaged in the manufacture of a medicinal preparation which he calls "Anti-germ Elixir," and which he sells to the public; that he used sulphuric acid as one of the ingredients; that he went into the defendant's drug-store and called for sulphuric acid, and was given hydrochloric acid instead; that not knowing he had not been sold the sulphuric acid as he had requested, he mixed the hydrochloric acid into a quantity of the "Anti-germ Elixir" he was preparing; that he thus compounded eight dozen bottles, which he sold to the public; that he sold the preparation at the rate of fifty cents per bottle; that his customers began to complain that his medicine "was not right;" that when he had made investigation and discovered the mistake, he was required to refund the money to his customers; that the reputation of his medicine was seriously injured.  He prayed for damages on account of the loss of the price of the eight dozen bottles of the medicine, and also on account of the damage done to his business through the ruining of the reputation of the "Anti-germ Elixir."

The defendant demurred generally, and particularly on the ground that the plaintiff failed to allege that he was a licensed physician or pharmacist.  The court passed an order that the demurrer be sustained unless the defendant amended within five days.  He refused to amend, and excepted.  No point is made as to the right of the defendant to raise by demurrer, instead of plea, the question as to whether the plaintiff's manufacture and sale of the "Anti-germ Elixir," without a license as a physician or pharmacist, was so criminal as to make his business an unlawful traffic from which no cause of action could arise in his favor.  In his brief and argument the plaintiff meets the question fairly and squarely, and asserts that his business was lawful, and that his damages are recoverable.

1.  By the act of September 29, 1881, the Board of Pharmaceutical Examiners was created ·and the licensing of druggists provided for.  This act, together with certain amendments thereto, is incorporated in the Political Code of 1895, §§ 1192-1503. By one of the paragraphs (§ 1499) it is provided: "No person shall engage in the compounding or vending of medicines, drugs, or poisons within this State without a full compliance with this

Article, except—1.   Such druggists as are exempted from the oper-
ations of the present law by the statutes of the State of Georgia,
and such druggists as have heretofore obtained license, and are
legally authorized by existing laws to compound and vend drugs,
poisons, and chemicals.   2.   Physicians putting up their own pre-
scriptions, and dispensing medicines from their own office.   3.
Merchants selling family medicines not poison, as prescribed and
allowed by the Code of Georgia.   4.   Assistants in drug-stores
where the manager has complied with the requirements of this
Article."

The first contention of the plaintiff is that the "Anti-germ
Elixir" was not a medicine, drug, or poison within the purview
of this law.   He says he was engaged in the manufacture and
sale of a proprietary preparation, not a medicine recognized in
the pharmacopœia and other standard pharmaceutic books, and
that only drugs and medicines so recognized are within the legis-
lative intention.   He draws this argument from the fact that the
act against the adulteration of drugs, now contained in §1500 of
the Political Code of 1895, states that "A drug . . shall be
deemed to be adulterated:   (1) If when sold under or by a name
recognized in the United States Pharmacopœia it differs from the
standard in strength, quality, or purity laid down therein.   (2)
If, when sold under or by a name not recognized in the United
States Pharmacopœia, but which is found in some other standard
work, it differs materially from the standard of strength, quality,
or purity laid down in such work.   (3) If its strength, quality,
or purity falls below the professed standard.   Every person man-
ufacturing, offering for sale, or selling any drug, medicine, chem-
ical, or pharmaceutical preparation shall furnish to the State board
of pharmacy, or any person interested or demanding the same, who
shall tender him the value of the same, a sample sufficient for
the analysis of any such drug, medicine, chemical, or pharmaceuti-
cal preparation which is in his possession."   The argument is not
valid.   Plainly, as will appear by reference to the third subdivision
of the quotation given just above, even the statute against adultera-
tion has reference not only to drugs and preparations recognized
by the standard work, but also to others.   Be this as it may, the
language of the statute against the manufacture and sale of drugs
and medicines by unlicensed persons is broad and comprehensive

in its terms. A reference to the preamble of the act of 1881, as originally passed, will show that the legislature intended that the law should be enforced rigidly against the sophistication of drugs and the handling of curatives by ignorant or unqualified persons. It is dangerous enough that we must take regular drugs and medicines prescribed by skilled physicians and prepared by licensed druggists; but God save us if the ignorant but pretentious unlicensed compounders and vendors of cure-alls and nostrums are to be turned loose to prey upon our credulity. The pharmaceutic license law was passed for the protection of. the public, and will be liberally construed to that end. *Taliaferro* v. *Moffet,* 54 *Ga.* 150; *Murray* v. *Williams,* 121 *Ga.* 63 (48 S. E. 686); People *v.* Abraham, 16 App. Div. 58 (44 N. Y. Supp. 1077); People *v.* Bartow, 6 Cow. 291; 6 Bac. Abr. 391.

2. The plaintiff's next contention is that he is within that portion of the act which excepts from its operation "merchants selling family medicines not poison, as prescribed and allowed by the Code of Georgia." It will be seen that this exception relates only to certain kinds of family medicines—those prescribed and allowed by the Code of Georgia. The Code of 1895 has no provision on the subject, but by looking to the original act we find that §1409 of the Code of 1873 was a part of the old "Physicians and Druggists Acts." It allowed merchants to "deal in medicines already prepared, if patented, or, if not patented, are legally warranted by a licensed druggist." It would seem, therefore, that under the third subdivision of §1499 of the Code of 1895, the law now in force, merchants may sell only such non-poisonous, already-prepared family medicines as are patented, or are warranted by a licensed druggist. A merchant, therefore, may not compound medicine at all; he can sell it only in the event it is already prepared. He can not sell all patent medicines; he can sell only those which fall within the class called "family medicines." The expression "family medicines" is synonymous with such expressions as "domestic remedies," "household remedies," etc., found in the statutes of other States and common in general parlance. It includes such things as camphor, quinine, paregoric, spirits of turpentine, castor oil, saltpeter, epsom salt, etc. See Peters *v.* Johnson, 50 W. Va. 644, 652 (41 S. E. 190, 88 Am. St. R. 909, 57 L. R. A. 428). When a drug or medicine, whether patent medi-

cine or not, comes into such general and common use that its effects are well understood by people without medical knowledge, and it is not poisonous, it is called a family medicine. It is generally a question for the jury whether a given drug or medicine is a family medicine or not. Cook v. People, 125 Ill. 278 (17 N. E. 849); People v. Fisher, 83 Ill. App. 114. The plaintiff in the present case, however, was not engaged in the business of vending a medicine already prepared and patented, or warranted by a .licensed druggist; he compounded the preparation himself and sold it. His business was clearly illegal.

3. The business in which the plaintiff was engaged being criminal, no cause of action arose in his favor for the injury and damage thereto. He could not make a lawful contract to sell the medicine. If the defendant's alleged wrong has prevented the plaintiff from selling the preparation, it has merely prevented his committing a crime. The case falls within the maxim "ex dolo malo non oritur actio." Bennett v. Ware, 4 Ga. App. 294 (4), 306 (61 S. E. 546); Taliaferro v. Moffett, supra; Murray v. Williams, supra; Robertson v. Porter, 1 Ga. App. 223 (57 S. E. 993); Westmoreland v. Bragg, 2 Hill (S. C.), 414. It is true that the . plaintiff says that he himself took a dose of the medicine containing the hydrochloric acid and it made him sick, and ordinarily this would give a cause of action (Civil Code, §3866; Peters v. Johnson, supra); but this fact is alleged in the present petition not as a basis for the action, but merely incidentally as one of the circumstances by which the plaintiff discovered the alleged mistake. He took a dose of the mixture not as a medicine, but for the purpose of discovering what was wrong with it. He sued not for the injury to his health or his person, but for the injury to his business.　　　　　　　　　　　　*Judgment affirmed.*