Appeal from Third District.

## STATE v. YEE FOO LUN.

No. 2702.    Decided March 19, 1915 (147 Pac. 488).

1. PHYSICIANS AND SURGEONS—PRACTICING WITHOUT LICENSE—
   PROSECUTION—INSTRUCTIONS—DEFINITIONS OF TERMS. In a prose-
   cution for practicing medicine without a license in violation of
   Laws 1911, chap. 93, which after denouncing the offense pro-
   vides that the sale of "domestic family remedies" is not thereby
   prohibited, the court should have instructed on the meaning
   of the phrase quoted. (Page 538.)

2. PHYSICIANS AND SURGEONS—PRACTICING WITHOUT LICENSE—
   PROSECUTION—REFUSAL OF INSTRUCTION. Since, in a prosecution
   for practicing medicine without a license in violation of Laws
   1911, chap. 93, which, after denouncing the offense, provides
   that the sale of domestic family remedies is not thereby pro-
   hibited, the question whether various herbs sold by defendant
   were domestic family remedies was a mixed question of law
   and fact, the court properly refused to instruct that such herbs
   were domestic family remedies. (Page 540.)

3. CRIMINAL LAW—INSTRUCTIONS—DUTY TO REQUEST. Where de-
   fendant in such case excepted to the charge on the ground that
   it was the court's duty to define "domestic family remedies,"
   he should have proposed an instruction embodying the defini-
   tion desired. (Page 540.)

4. PHYSICIANS AND SURGEONS—PRACTICING WITHOUT LICENSE—
   PROSECUTION—DOMESTIC FAMILY REMEDIES—SUFFICIENCY OF EVI-
   DENCE. Evidence, in a prosecution for violating Laws 1911,
   chap. 93, prohibiting practicing medicine without a license, but
   excepting the sale of domestic family remedies from its terms,
   held insufficient to show that the herbs sold by defendant were
   domestic family remedies.    (Page 540.)

5. PHYSICIANS AND SURGEONS—PRACTICING WITHOUT LICENSE—DE-
   FENSE. Where, in a prosecution for practicing medicine with-
   out a license in violation of Laws 1911, chap. 93, it appears
   that defendant diagnosed, treated or advised for some physical
   ailment or condition of another for compensation, it is no ab-
   solute defense that he administered or advised a domestic fam-
   ily remedy. (Page 541.)

6. PHYSICIANS AND SURGEONS—PRACTICING WITHOUT LICENSE—
   PROSECUTION—SUFFICIENCY OF EVIDENCE. Evidence, in a prose-
   cution of a defendant claiming to be a Chinese herb doctor,
   held to show that he practiced medicine without a license, in
   violation of Laws 1911, chap. 93. (Page 542.)

7. CRIMINAL LAW—HARMLESS ERROR—INSTRUCTIONS. Where, in a
   prosecution for practicing medicine without a license, in viola-
   tion of Laws 1911, chap. 93, the evidence conclusively showed
   defendant's guilt, and that the herbs sold by him were not
   domestic family remedies, the court's failure to define "do-
   mestic family remedies," being error in defendant's favor, was
   harmless. (Page 543.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Yee Foo Lun was convicted of practicing medicine without a license. He appeals.

AFFIRMED.

*Soren X. Christensen* for appellant.

*A. R. Barnes,* Atty. Gen., and *E. V. Higgins* and *G. A. Iverson,* Asst. Attys. Gen. for the State.

STRAUP, C. J.

The defendant was convicted of practicing medicine without a license, and appeals. The statute (Laws of 1911, p. 135) under which he was prosecuted, so far as material defines the practice of medicine thus:

"Any person shall be regarded as practicing medicine within the meaning of this title, who shall diagnose, treat, operate upon, or prescribe or advise for, any physical or mental ailment or any abnormal, mental or physical condition of another" for a "fee, gift, compensation or other pecuniary benefit, reward or consideration; * * * Provided that nothing in this title shall be construed to prohibit * * * the sale or administration of proprietary or domestic family remedies," etc.

The information charges that the defendant did "unlawfully practice medicine without holding a lawful certificate or license issued by the board of medical examiners of the State of Utah, by then and there diagnosing, treating and advising, for a pecuniary consideration, one C. C. Smith, who was then and there suffering from some physical ailment."

It probably would have been a better information had it charged that the defendant diagnosed or treated an ailment instead of Smith.  No point, however, is made on the information, and since both parties regarded it as sufficiently charging a diagnosing and treating an ailment, and as it, though faulty, nevertheless states an offense, we pass to a consideration of the presented points which are directed to the court's charge.

The contention made is that what the defendant did was merely to sell or administer a domestic family remedy, and that the court ought so to have charged, or, failing in that, to have defined to the jury what, under the statute, is meant by the phrase, "domestic family remedies," but which the court entirely left to the jury.  It is admitted the defendant had no license.  In brief, the evidence shows:  He, at Salt Lake City, maintained an office, consisting of three rooms, spoken of by the witnesses as a reception room, and office, and a private room where he gave his treatments.  He advertised his business in the public press thus:

"If you are troubled by rheumatism, pains in the stomach, back, sides or chest; if you have headaches, nausea, indigestion, appendicitis, or constipation, if you cannot sleep at night and are nervous; if you are bothered by catarrh, lung or throat trouble, consumption, kidney or blood disorders, dizziness, exhaustion, female weakness, nervous debility, dropsy, Bright's disease, scrofula, eczema, eruptions of face or body, pimples, lumbago, piles or any other affliction; in fact, if you are sick, no matter what your ailment, you may call on Yee Foo Lun, C. H. D., and inspect the great list of statements from persons who have been cured," etc.

"If you are sick, no matter what your ailment, do not delay, but call on Yee Foo Lun, C. H. D., at the Chinese Herb Institute, 118 Main street, over Hirschman's shoe store, and a consultation with him will prove profitable to you."

"Yee Foo Lun, C. H. D.'s ancesters in China for centuries have been famous as expert herbalists, and in addition to his more modern scientific learning, he possesses the precious secrets of the curative powers of the Chinese herbs.  These

secrets are never written, but are handed down from father to son from generation to generation.''

"It is better to call in person on Yee Foo Lun, but those who cannot call should write, stating symptoms in full and inclose stamps for a speedy reply. Yee Foo Lun's address is 118 Main street or Hotel Utah.''

Smith visited the defendant at his office. He entered the reception room, and, finding several persons ahead of him, awaited his turn to consult with the defendant. As testified to by Smith, he finally went into the defendant's office, told him that he suffered pain in his shoulder, that he would like to know what was the matter with him, and if he could do something for him. The defendant "felt my pulse, both hands, and sat on the other side of the desk, looked at me for a few minutes, and told me I was on the verge of a partial paralysis.'' Smith stated that he did not think it was as serious as that, expressed surprise at his condition, and asked him how much it would "cost for treatment.'' The defendant told him that he would give him "seven treatments for ten dollars,'' ten dollars a week. When asked how long it probably would take to effect a cure, the defendant stated three or four months, said "he couldn't tell.'' Smith paid him ten dollars for a week's treatment, or for seven packages of herbs. The defendant requested him to call at the office "to take the medicine.'' On Smith's statement that he would be out of town for a few days, the defendant told him that he would fix up a dose for him then, give him three packages to take with him, and that on his return he could call for the rest. The defendant thereupon fixed up a dose for Smith and gave him three packages, with written directions, "Boil with three cups of water, boil twenty—thirty minutes & boil down to one cupful,'' to be taken daily before or after meals, or when convenient. Smith took the package to a chemist. The chemist's analysis shows:

"The medicine submitted is absolutely free from added mineral and metallic substances. It does not contain any alcohol, glycerine, ether, chloroform and other volatile drugs, except traces of aromatic oils (cinnamon, etc.) Furthermore, the medicine is absolutely free from powerful narcotic or alka-

loidal drugs, like opium, morphine, cocaine, etc. It does contain, however, in solution a mixture of drugs as shown by the presence of tannin, rosins, starches, gum, etc. These drugs are without definite active principles, hence without definite chemical reactions, and therefore it is an absolute impossibility to identify, by scientific or other means, such drugs in a liquid form. The odor and taste of the medicine strongly suggests among other drugs the presence of ginseng, cinnamon, licorice, sarsaparilla, etc.—a class of drugs which contain the above found vegetable principles.''

The defendant testified in his own behalf that he was a graduate from medical institutions in China, spent many years in China in the study of medicine, and was capable of diagnosing and treating diseases; but that his business was ''selling Chinese herbs, herbs imported from China, selling Chinese herb treatment,'' and that he had been in that business for twelve or fifteen years. He further testified that Smith came to his office, and that what was said between them' was this:

''Smith: Are you the man advertising?

''The Defendant: Yes, sir.

''Smith: I got a pain here.

''The Defendant: How did you happen to come to see me?

''Smith: I went to some doctor and didn't do me any good.

''The Defendant: What do you think is the matter with you?

''Smith: I believe I got rheumatism. Can you do anything for that?

''Defendant: Of course, I can serve some herbs for rheumatism; what do you suppose caused it?

''Smith: One cause of rheumatism I understand doctor to say, weak kidney, uric acid.

''Defendant: That is took for rheumatism or paralysis.

''Smith: What do you do and how you treat?

''Defendant: I don't treat anybody; I sell different herbs, same as I did in Denver, and everywhere where I did business.

''Smith: How do you do it?

''Defendant: I sell you seven packages for ten dollars; you take one each day; each one of these packages boiled in three

cups of water; you take it before and after eating, or any time most convenient.''

He further testified he gave Smith but four packages because he didn't have enough herbs unpacked at that time to give him seven packages. He was asked by his counsel:

''Did you diagnose his case?''

He answered:

''No, because I always try to get away from doing anything against the law. I have been in court so much I know just what I have to do, and so I don't try to do that at all.''

When asked on cross-examination what he told Smith about his having paralysis he answered:

Smith ''say is there any danger of paralysis? I say rheumatism and paralysis are pretty near the same; one, some people would consider paralysis, others would call it rheumatism; I say get so bad from rheumatism it turn to paralysis. Q. These herbs were just as good for paralysis as for rheumatism? A. Well, yes, sir * * * Q. You say you don't diagnose anything? A. In what way you mean? Q. What did you mean when you said you didn't 'diagnose' the case? A. Well, in a way you might consider it diagnosing, but I really didn't diagnose his case, or any other case; he said he thought he had rheumatism, and said, 'Is there any danger of it turning to paralysis?' and I said, 'Paralysis and rheumatism are pretty near the same.' Q. Do you diagnose diseases? A. Well, I can.''

Then he was asked whether he or the persons who consulted him diagnosed their diseases. He answered:

''They come in and tell me they have rheumatism; want some of my herbs. Q. Who finds out what they have, you or the fellow who comes in? A. I ask them what they have been treated for by any other doctor, any particular ailment; they tell me the doctor treated them for stomach trouble; then I serve them a certain package of herbs. Q. Suppose no doctor has treated him, then what do you do? A. They tell me what they think about it, what they think is wrong with them.''

When asked if he gave the same kind of herbs in each case, he replied:

"Not exactly, but different kinds."

When asked if he or the man who came in determined which kind should be given, he answered:

"I sell different kinds, different packages. I sell to them whatever they tell me the trouble is; one kind for asthma, one kind for rheumatism; same as the drug stores have 200 different kind, and they sell them; same way."

When asked who mixed the herbs, and who determined the kind and amount put in each package, he answered that he did, or some one in his employ under his direction, and that he determined the particular kind of herbs and the quality of each to be given "in the particular case." Then he was asked:

"You treat everything—cure everything?"

He answered:

"Some things I don't treat; some things I don't have any treatment for. Q. You treat all of these things (enumerated in the advertisement)? A. Yes."

He further testified that the packages sold to Smith contained about fourteen different kinds of herbs, most of which grew only in China, few of them in America, and that "as to a large number of them the only place you can get them is at a Chinese store in San Francisco." He was asked to name the different kinds in the packages. He answered:

"The names are all Latin; I can tell you the Chinese name; have to get the catalogue, in three languages, Latin, English, and Chinese; some of these I can't tell you them in English."

He further testified that "the curative powers" of the herbs sold to Smith, "how to use them, when to use them, and the combination of them" were, to a large extent, a secret acquired from his father who was a physician, and from "his fathers who went before him," and from studying medicine in China. Then when asked by his counsel, "Do you charge anything for diagnosing?" he answered:

"I don't charge anything; no, sir; consultation free. Q. Entirely free; the only thing you charge for is what? A. Herbs. * * * Q. Doctor, now these packages you sold to Mr. Smith, what are they? A. Chinese herbs and family remedies. Q. They are known as family remedies? A. Yes,

sir.  *  *  *  We use them as family—known family remedies, secret known to Chinese as a family remedy, and known in general as a family remedy.''

The defendant requested the court to direct the jury to render a verdict of not guilty on the ground that ''the herbs as introduced in evidence, and as testified to on the part of the State and the defendant, are domestic family remedies.'' The court denied that, and charged:

''You are instructed that whether or not the remedies involved in the controversy in this case are 'domestic family remedies' is to be determined by you from the evidence, considered in the light of that experience in the affairs of life that you have in common with all the rest of mankind.

''The court instructs you that it is lawful for any person to sell and administer domestic family remedies to anyone, and if you find that only domestic family remedies were administered, and that there was no charge for the diagnosis, if you find that there was a diagnosis, then your verdict must be not guilty.''

The court's refusal to give the request, and charging as was done, presents the question for review. The point made is that it was the duty of the court, and not within the province of the jury, to determine whether the herbs were or were not domestic family remedies, and that the court on the defendant's request ought to have determined that they were family remedies, and so directed the jury, or at least defined to the jury what, under the statute, was meant by domestic family remedies, and then the jury to determine upon the evidence whether the herbs sold or administered were or were not such remedies within such definition. This, as has been seen, the court did not do. Thus the conclusion is pressed that the court did not do its duty as required by section 3479, C. L. 1907, decide ''all questions of law, including * * * the construction of statutes,'' but cast such duty on the jury, first, to determine what, under the statute, was meant by the term ''domestic family remedies,'' and then to determine whether the committed acts did or did not come within the statute. True it is that the court is required to decide all questions of law, ''including the con-

struction of statutes.'' True it also is that the court here did not tell the jury what was meant by the term in question. The state, in effect, contends that these words have no technical meaning or significance, but are common words, well understood alike by the laity and the profession; hence the statute in such respect is so self-explanatory as to require no judicial construction or interpretation. The case of the *People* v. *Fisher*, 83 Ill. App., 114, to some extent at least, supports the contention. But in the case of *State* v. *Huff*, 75 Kan. 585; 90 Pac. 279; 12 L. R. A. (N. S.) 1094, a contrary view seems to be entertained. In the latter case the act provided, ''Nor shall anything in this act apply to the administration of domestic medicines,'' a slightly different phrase from our statute, yet not dissimilar in meaning. There the court instructed the jury what was meant by the term ''domestic medicine.'' The defendant on appeal complained of that and contended that the words ''were primitive words, not capable of being made clearer by other terms: that only confusion could result from an attempt to explain them; that it should have been left to the jury to say what domestic medicines were, and whether the substance applied by the defendant was a domestic medicine.'' In reply to that the Appellate Court said, ''To this we cannot agree,'' and proceeded at length to show what is meant by domestic medicines. Resort was had to numerous medical and encyclopedic medical dictionaries and adjudged cases, and the conclusion reached that domestic medicines are:

''Such substances as are commonly kept by nonprofessional persons in their own homes for use as remedies in the absence of a physician, being necessarily substances the effect of which is a matter of general knowledge, so that no special training is required for their safe administration.''

The same thought is entertained by the Georgia court (*Lewis* v. *Brannen*, 6 Ga. App. 419; 65 S. E. 189), where it is said that ''family medicines,'' domestic remedies, ''household remedies,'' include ''such things as camphor, quinine, paregoric, spirits of turpentine, castor oil, saltpeter, Epsom salt,'' etc., and are such ''as have become generally considered to

be household remedies, by reason of the fact that, through common use, the effects produced by them are well understood by people without medical knowledge.'' We are inclined to these views, and, in a proper case, think it the duty of the court, instead of the jury, to determine what, under the statute, is meant by the term ''domestic family remedies.'' Though it may not be easy of definition and explanation, nevertheless we think it better to require the court to define, rather than leave it to the jury to speculate, the intended meaning.

In no event was the defendant entitled to the request. This, because the question is a mixed question of law and fact; first, the court to define what is meant by the phrase, ''domestic family remedies,'' then the jury to determine from the evidence whether the committed acts did or did not come within the statute as construed and defined by the court.. The request was therefore properly refused.

Now, as to the instruction. The defendant took an exception to the charge on the ground ''that it is the duty of the court to give the definition and not to leave it to the jury.'' But he offered no request as to that. If he desired the court to do what was embodied in his exception he ought to have proposed a request to that effect. This he did not do, but requested the court to charge that the herbs as matter of law were domestic family remedies, and for that reason to return a verdict of not guilty. Of course the court could not do that. But further as to this. There is nothing in the evidence to show that the herbs, either in law or in fact, were domestic family remedies. This, whether the matter is viewed from the standpoint of the report of the chemist as to the contents of the packages, or from the testimony of the defendant. A concoction or compound of ginseng, cinnamon, licorice, sarsaparilla, etc., can neither in law nor in fact be regarded a domestic family remedy. That it is free from alcohol, chloroform, narcotic or alkaloidal drugs, and probably harmless, is not the controlling factor. Such a compound or concoction is not something commonly kept by nonprofessional persons in their homes, or of which they have general knowledge. Instead of calling it a domestic family remedy, it is better to call it by its right name—a subterfuge to deceive

the credulous and the afflicted. When the question is looked at from the defendant's evidence the matter is still worse. A mixture of fourteen different herbs, equally efficacious for rheumatism, paralysis, appendicitis, piles and pimples, and which are so well known that to properly name and describe them requires the use of three languages; their curative powers so familiar as to be understood only by Chinese expert herbalists who acquired knowledge "of the precious secrets" only through tradition and by scientific learning so modern as to have been handed down generation after generation for centuries by Chinese herbalists and ancestors of the defendant, and which are so general and so common as to be had only at a Chinese store in San Francisco, or at a Chinese Institute conducted by a Chinese expert herbalist, can in no sense be regarded as a domestic family remedy. It is anything but that. The defendant and his counsel calling the herbs a family remedy: "Doctor * * * what are they? A. Chinese herbs and family remedies"—is of no significance. Whether what the defendant gave or sold was or was not a family remedy was dependent upon the facts and the law; and, according to the facts testified to even by him, not his conclusion, the substance sold or given was neither in law nor in fact a family remedy. As well call a family remedy any compound of any or all kinds of familiar or unfamiliar bark, roots, herbs, or weeds, grown in the Orient or the Occident, and put out as a "cure-all" by a charlatan to deceive the credulous. We think it clear that there is no evidence to bring the case within the proviso, selling or administering a domestic family remedy, and that the defendant, hence, was not entitled to go to the jury on any such theory.

Still further, the obvious purpose of the statute is. to prevent practicing medicine without a license. As has been seen, under the statute, any one who shall diagnose, treat, or advise for any physical ailment or condition of another, for a fee, compensation, or consideration, is regarded as practicing medicine. If any one does that without a license he offends, no matter what remedy, substance, or thing he may prescribe, give, administer, or advise. He cannot exculpate himself by showing that he gave, administered,

or advised a domestic family remedy, or any other substance or instrumentality; much less a concoction or compound which is a mere subterfuge, or one whose curative powers are known only to so-called Chinese expert herbalists. He offends though he may give or administer but castor oil, or Hostetter's bitters, or a boiled concoction of bark, roots, or herbs, or may give nothing, and only advise exercise or rest. What was said in *Huff* v. *State* may here be said:

"It would defeat the manifest purpose of the law to hold that, under these provisions, a defendant, charged and proved to have received money for recommending a certain substance as a cure for disease, might exculpate himself by showing that the substance he recommended was a domestic medicine, in the sense that it was a well-known remedy, the effect of which was a matter of common knowledge."

Now, what did the defendant do? Certain it is that whatever he did was for compensation or consideration. It is urged he did nothing but sell herbs. But look at his advertisement. See how he held himself out, not as a vendor or salesman, but as a "C. H. D.," Chinese Herb Doctor, who descended from "famous Chinese expert herbalists," and who possessed "the precious secrets of the curative powers of the Chinese herbs," from which all blessings flow He did not invite prospective purchasers to come to inspect his goods nor make known what he had for sale, but invited the sick and afflicted, "no matter what your ailment," to come to him "without delay" and consult him, "and a consultation with him will prove profitable"; if they could not call in person "write, stating symptoms in full." Just like others who seek to practice by mail, "same way." What did he hold himself out to do? Merely to sell herbs? Not that, but to treat and cure about every ailment or disorder flesh is heir to. While he in his advertisement may not have stated in express words that he diagnosed or treated anything, nevertheless by his advertisement impliedly conveyed, and intended to convey, the meaning that he treated and cured all ailments and disorders therein enumerated. He so testified that he treated all such ailments and diseases. They are indeed numerous, and some of them so unyielding to treatment as to

perplex and baffle all science, but which, the credulous are led to believe, may be cured by the "precious secrets of the curative powers of the Chinese herbs," consisting in fact of but a concoction of licorice, cinnamon, sarsaparilla, and ginseng. Nowithstanding the defendant's play on words that he "did not diagnose the case or any other case," nevertheless, from even the things and facts testified to by him, he held himself out, undertook, and attempted to do just that. Perhaps not as taught at modern medical institutions, but all the more offended because he did it *a la Chinoise*. But whatever difference of opinion there may be on the record as to whether he diagnosed a physical ailment of Smith, or whether Smith diagnosed it for him, there certainly can be no doubt that he, without a license and for a consideration, treated Smith for an ailment. And since this is so it is wholly immaterial what he gave or administered, or advised, whether a family remedy or not. The claim made that he charged only for the herbs and nothing for diagnosis, consultation, or treatment is, like his concoction, a mere pretense, and an attempt to exculpate himself by bookkeeping. As well say one charged nothing for an operation, but charged $500 only for bandages and antiseptics.

So, while the charge was not what it ought to have been, it nevertheless was error, not against, but in favor of, the defendant, and therefore was as to him harmless.    **7**

Let the judgment be affirmed.

FRICK and McCARTY, JJ., concur.