STATE BOARD OF MEDICAL EXAMINERS v. TERRILL.

No. 2883.   Decided November 24, 1916 (161 Pac. 451).

1. PHYSICIANS AND SURGEONS—"PRACTICING MEDICINE"—WHAT CONSTITUTES—EVIDENCE. Evidence *held* to show that defendant practiced medicine without a license, as he undertook to examine, diagnose, and prescribe for all ailments, as well as to do general massaging.   (Page 648.)

2. INJUNCTION—PRACTICING MEDICINE—EFFECT. A decree, enjoining defendant from diagnosing, treating, operating on, prescribing, or advising for any person afflicted with any mental or physical ailment or condition, from which he expects to or does receive a pecuniary compensation, or from practicing medicine within the state until he shall have received a certificate permitting him to practice medicine, does not prevent him from doing the business of an ordinary masseur, since it is in the words of Laws 1911, c. 93, prohibiting practicing medicine without a license.   (Page 650.)

3. PHYSICIANS AND SURGEONS—PRACTICING MEDICINE. Laws 1911, c. 93, prohibiting practicing medicine without a license, does not concern systems of treatments, but merely prohibits any one from treating diseases who has not the requisite qualifications.   (Page 651.)

Appeal from District Court, Second District; Hon. *N. J. Harris,* Judge.

Injunction by the Board of Medical Examiners of State of Utah against G. W. Terrill.

From a decree granting the writ, defendant appeals.

AFFIRMED.

*George Halverson* for appellant.

*A. R. Barnes, Atty. Gen.,* and *E. V. Higgins* and *G. A. Iverson, Asst. Attys, Gen.* for respondent.

STRAUP, C. J.

The defendant is enjoined from practicing medicine without a license, and appeals.

He held himself out as a "scientific manipulator." He claims no knowledge of medicine, nor of anatomy, physiology, or hygiene, nor of any of the subjects enumerated in the statute (Laws Utah 1911, c. 93), knowledge of which one, to take an examination and obtain a license, must possess, and concerning which one must hold a degree or diploma from a legally chartered medical school requiring such subjects. The defendant, however, claims to be merely a masseur, and the right only to give massage treatments by rubbing and manipulating to relax the muscles of his patients and to accelerate the flow of blood, what popularly is known as ordinary massaging. If that were all the defendant did, it might well be conceded that he did not practice medicine within the meaning of the statute (Laws Utah 1911, c. 93), and hence needed no license, and ought not to have been restrained.

But the record shows that he undertook to do, and did, much more. He advertised as a "scientific manipulator," maintained an office, and there received patients suffering from all kinds of ailments; and, in response to calls, visited and treated them at their homes. As testified to, he, for compensation, manipulated the muscles of the abdomen of one suffering from appendicitis, and similarly manipulated others suffering from ulcers or cancer of the stomach; the body of a girl, who, as testified to, "had every indication of typhoid fever," and by such manipulation claimed to have reduced the patient's temperature from 103 to 98 degrees, and told the parents that "if they wanted to, to give the girl a little castor oil and after that citrate of magnesia," and manipulated others for rehumatism. By the same process he treated a little boy suffering from tubercolosis, or other disease, of the hip. The boy's limb, by a regular physician, had been placed in a frame and cast to relieve the strain from the hip. This the defendant removed, and gave the boy treatment by manipulation, which, as testified to, so improved the boy that he was soon able to walk and to

operate an automobile. By manipulation he also treated a baby, who, as testified to, ''the doctor said,'' had leakage of the heart and bowel complications. He was called to visit, and treated, a woman who was sick and unconscious. He restored consciousness by rubbing and manipulating the woman's back, sides and stomach. The wife of a dentist was treated by a regular physician for tonsilitis. She grew worse, so was the testimony. Then the attending physician diagnosed the case as tuberculosis of the throat, but later said that he was mistaken in that. She suffered from severe pains back of the ear and in the spine. The attending physician advised consultation with a specialist. Without the knowledge or consent of the physician, and in his absence, the defendant was called in. As testified to, ''he inquired as to her feelings and how long she had been sick and where she was suffering pain, and then pulled off his coat and began to manipulate in the region of her neck and spine for fifteen or twenty minutes. She felt relieved. The next morning, when the attending physician arrived, he found her feeling and looking better. The morning after that she was so much better that the attending physician said that it was not necessary for him to call any more. The defendant told the husband that he had better give his wife some juniper root, which was done. Upon the defendant giving the woman several other treatments, her fever disappeared, and she was free from pain. When the defendant visited her, she was confined in bed for two weeks. Now she was able to get up and walk about. She continued her treatments at her house and at the defendant's office. The defendant, with his hands and fingers, simply manipulated the neck and back and the spine.'' Another patient, suffering from a sprained and swollen ankle, went to the defendant's office for treatment. Upon exhibiting the foot the defendant told him to remove his shoe and roll up his pant leg. After examining the foot, the defendant told him that he had a broken arch. He rubbed it, bathed it with some sort of oil or liniment out of a bottle, and then bandaged it. Other instances were testified to where persons suffering from ailments visited the defendant at his office, or he at their homes, and gave them treatments.

The doing of these things clearly was practicing medicine within the meaning of the statute. Laws Utah 1911, c. 93, p. 135; *State* v. *Yee Foo Lun,* 45 Utah, 531, 147 Pac. 488; *Board* v. *Freenor,* 47 Utah, 430, 154 Pac. 941; *State* v. *Erickson,* 47 Utah 452, 154 Pac. 948. There can be no doubt of that, and so the court found. But it is claimed the        **2** decree is too broad, in that it, as is urged, prohibits the defendant from doing merely ordinary massaging. The decree is that the defendant be—

"restrained, prohibited and enjoined from diagnosing, treating, operating upon, prescribing or advising for any person or persons within the state of Utah afflicted with any mental or physical ailment or afflicted with any abnormal, mental or physical condition, from which person or persons he expects to or has received or does thereafter receive a pecuniary compensation, or from practicing medicine within the state of Utah, until said defendant shall have received a certificate from the board of medical examiners of the state of Utah permitting him to practice medicine within said state."

Comparing the statute with the decree, it is seen that the decree but follows the language of the statute, and forbids the defendant from doing what the statute itself forbids. If the statute forbids mere massaging without a license, then also does the decree. If the statute does not, then the decree does not. As already indicated, we think mere "massaging," as that term popularly is understood, is not, within the meaning of the statute, "diagnosing, treating, operating upon or prescribing or advising for any physical or mental ailment or abnormal condition of another." *People* v. *Hettiger,* 150 Ill. App. 448; *People* v. *Gordon,* 194 Ill. 560, 62 N. E. 858, 88 Am. St. Rep. 165. Thus, ordinary massaging is not within the terms of the decree, and hence the defendant is not forbidden doing that. Mere massaging is no more forbidden than mere nursing. It is easy enough for a nurse, or a masseur, to keep within his sphere and not encroach upon the law by assuming or undertaking to diagnose, treat, operate upon, prescribe, or advise for ailments. But the trouble with the defendant is this: To the public he held himself out as "a scientific manipulator," and as willing and ready to receive

and treat patients suffering from all sorts of ailments, but when summoned into court declares himself to be but a humble masseur, giving only massage treatments and nothing more.   Let him be to the public what he claims to be in court, and let him refrain from diagnosing, treating, prescribing, and advising for ailments of others and confine himself to merely "massaging" as that term popularly is understood. Certainly one may employ a trained nurse, who, for compensation, and without a license, may accept such employment, and, without offending, may, in attendance upon a patient, render such service as ordinarily is rendered by a trained nurse; but she may not diagonse, treat, prescribe, or advise for ailments in the sense that one holding a certificate or license to practice medicine may do.   That also is true of a masseur. But the defendant, though merely a masseur, claimed the right to do, without a license, all that one holding a license is permitted to do.   Though a mere masseur, professing no knowledge of the human system, or of diseases to which it is subject, the defendant, nevertheless, undertook and claimed the right to treat about all kinds of diseases.   Without any knowledge of anatomy, or surgery, he undertook to treat a broken or fractured bone of the foot; without any knowledge of pediatrics, he undertook to treat children for leakage of the heart and abdominal affections; without any knowledge of laryngology he undertook to treat tonsilitis, or throat affections; without any knowledge of anatomy, surgery, bacteriology, pathology, or histology, or of other scientific subjects, undertook to treat a boy for hip disease and patients for appendicitis and rheumatism.   If a practice of that kind is to be permitted, then may we as well go back to the days when surgery was performed by the barber and the healing art administered by the Indian powwow.

The object of the statute is to protect the sick and suffering and the community against the unlearned and incompetent who hold themselves out as being possessed of peculiar skill in the treatment of diseases, but who **3** are ignorant of the human system and of the diseases to which it is subject.   As we said in the Freenor Case we may well again say here, that the

law is not concerned with the question whether one system of treatment is as good as or better than another, or what particular treatment should be administered, or what system employed. But "it is concerned with the question that, before any one shall undertake, no matter by what system, to diagonse, treat, operate upon, or prescribe or advise for, any physical or mental ailment or condition of another for a fee or other consideration, he shall possess the learning and skill required by the statute, and produce a degree or diploma from a college meeting the requirements enumerated in the statute, and successfully pass an examination before the board, showing his competency. When he does that, then he may practice whatever system he may consider the most efficacious, or do that in a given case which he thinks will produce the best result. Until he does that he cannot practice at all."

We are therefore of the opinion that the judgment should be affirmed, with costs. Such is the order.

FRICK and McCARTY, JJ., concur.